OpijsioN oe the Court,
Col. George Nicholas, in his lifetime, purchased of Simon Hickey a lot in Lexington, and paid part of the parchase money. Nicholas afterwards died, having, in his will, devised his estate, real and personal, to his executors, Joseph H» Daveiss and James , iomson. In *53 Í 803 John A. Seitz recovered a judgment in the gener-ai court, for £784 1 3s. 4& against Nicholas’ executors, and Daveiss, one of the executors, made a verbal arrangement with Seitz to receive the lot in satisfaction of his judgment, and pay the balance of the purchase money to Ilickey. At the same time, Daveiss signed a blank paper, on which he made an endorsement in the following words:
“ Charts Blanche. — Morrison and Daveiss, ex’rs. with J. A. Seitz, agreement to sell the corner lot where Lampton lives in Lexington, for £1000; Seitz to pay Hickey, and reduct his own judgment, and pay balance, and indemnify the executors against any damage on account of paying those two debts in full.
Teste — J. Allen. J. H. D.”
This paper was delivered by Seitz to James Hughes, to be filled up with the agreement in form; but Seitz shortly afterwards - went to New-Orleans, where he died, and the paper was never filled up, and remained in the hands of Hughes, as it had been delivered to him by Seitz.
John Jordan had been the partner of Seitz, and in the articles of partnership it was stipulated that they should be joint proprietors of all the property, real and personal, vested in either of them; and when Seitz died, Jordan administered upon his estate, and in 1804 he sold the lot purchased of Hickey, to William Smith, and received the consideration; and Smith afterwards sold a part of the lot to Springle and Bobb, and received from them the purchase money therefor. But neither Seitz in his lifetime, nor Jordan afterwards, paid Hickey the balance of the purchase money due him. Jordan at length failed, and Hickey, becoming impatient, threatened to sue Morrison, who, to avoid the consequences, paid Hickey, and took a conveyance to himself, of the lot; but refused to convey to Robb and Springle; and to coerce a conveyance of the part they had purchased, they filed their bill in chancery, in which, after setting forth the purchase by Smith of Jordan, and their purchase frem Smith, they charge that Morrison was privy and consented to the sale by Jordan to Smith, and even attested the contract as a witness, setting up no claim to the lot, except to have the privilege of removing, or being paid for a shop on the lot, for which he was afterwards satisfied by-Jordan.; and *54 tha the was also privy to their purchase from Smith and consented to their taking possession, which they have ever since held.
They made the unknown heirs of Seitz, Jordan and Daveiss, and Morrison, defendants. Seitz’s heirs failed to appear. The other defendants answered; but their answers, except that of Morrison, are not material to be recited. Morrison, in his answer, admits the con-» tract, as before stated, between Daveiss and Seitz, and states that he has been always willing, arid was then willing to carry i.t into effect, according to the terms agreed on. He does not controvert the sale-from Jordan to Smith, nor that of Smith to the complainant; but he denies that he was privy or consented to the sale, from Jordan to Smith. He admits that he witnessed some paper between them, but denies a knowledge of its contents. He does not deny that he set up claim to the blacksmith’s shop, and was paid for it; but he denies that he ever signified to the complainant that he had no claim to any thing but the shop.
After the answers ivere filed, the suit abated by the death of Bobb and Springle, and a bill of revivor was filed in the name of their heirs. To that bill Morrison filed an answer, in which he pleaded and relied upon the statute against frauds and perjuries.
On a final hearing, the circuit court decreed Morrison to convey to the heirs of Bobb and Springle, upon their paying to him £429, with.interest from the first day of J une 1817 until paid, that being the amount paid by him to Hickey.
To that decree Morrison and the complainants have each prosecuted their writ of error. The assignment of error on tide part of Morrison, questions, the- propriety of the decree, in compelling him to convey upon any terms; and the assignment of error on the part of the complainants, controverts the propriety of subjecting them to the payment of the money advanced by Morrison to Hickey.
1. There is certainly some room to doubt, whether the memorandum made by Daveiss on the blank paper, was such as to take it out of the statute against frauds and perjuries. But, be that as it may, it evidently did not constitute an obligatory contract. The memorandum wras clearly only intended by Daveiss as instructions on his part, of the. terms which were to be inset t *55 ed in the agreement, which was to he signed by both parties; and without the signature of Seitz, it wants that mutuality which is essential to a contract that will be enforced in a court of equity. Most unquestionably, therefore, neither Seitz nor Jordan, as his surviving partner, could be entitled to enforce the execution of the contract on the part of Nicholas’ executors, without having previously performed the stipulations on their part; and, as a general rule, it is undoubtedly correct, that the purchaser of an equitable title cannot stand in a better situation than the person from whom he bought. But to this rule there are exceptions; for if a person, having a right to an estate, encourage, or even permit a purchaser to buy it of another, the purchaser will hold it against the person who has the right. This doctrine is founded on good reason, and is abundantly supported by authority. Sug. Yen. 539, and the cases there cited. Nor is it in confliction with the statute against frauds and perjuries, as is contended on the part of Morrison; for the statute only prohibits the enforcement ©f an equity derived from a verbal contract for land, and cannot be construed to apply to an equity resulting from the fraudulent or wrongful conduct of a party. If, then, Morrison, as the complainants allege, was privy to the purchase made by Smith of Jordan, and by his acquiescence encouraged Smith to advance-his money in making the purchase, he cannot be permitted now to resist the claim of Smith, or that of the complainants, who derive their title from Smith, on the ground, that Jordan had no right to sell; and that Morrison was present when the purchase was made by Smith, and acquiesced in the purchase, without objecting to Jordan’s right to sell, or asserting any claim against the lot, except as to the shop, for which he was paid, is satisfactorily proved in the cause. There is, indeed, no doubt, but that Smith knew that there v/as still a balance due to Hickey; but it is in proof, that Morrison, at the time of Smith’s purchase, declared that he would look to Jordan for the payment of it; and that he had, on that account, no claim against the lot. Smith, therefore, though he knew that there was a balance due to Hickey, could have no reason to expect that it would be claimed of him, and of course could have had no inducement to guard against the claim, in his contract with Jordan; and it is, under these circumstances, *56 much more consonant to justice, that Morrison, who confj(]¿cl ja Jordan, should sustain the loss resulting from his insolvency, than that Smith, or the complainants who purchased from him, should do so.
We are, therefore, of opinion, that the circuit Court was correct in decreeing Morrison to convey to the complainants; but that it was erroneous to subject them to" pay to Morrison the money which he had paid to Hickey.
The decree must be reversed, and the cause be remanded, for a decree to be entered in conformity to the foregoing opinion.
Morrison must pay the costs of both writs of error.