Judge Underwood
delivered the opinion of the Court.
Mosely, the plain tiff in error, filed his bill in the Montgomery circuit court, against Ashton Garrett, David Trimble, Peter R. Garrett and John Peebles, for the purpose of foreclosing a mortgage, executed on the 25th of September, 1817, by said Ashton, to the complainants, said David, said Peter R. and said John. No depositions were taken, and the cause was finally disposed of upon bill* answers and exhibits, The mortgage shows that the mortgagees were about, to become sureties or endorsers for the mortgagor, on a negotiably note or notes, and for the purpose of indemnifying the mortgagees against loss, the mortgagor conveyed to them a house and lot in Mountslerling, whereon he then lived, all the interest of the mortgagor in the firm of Trimble and Garrett, and *213 sundry slaves. The mortgage uses this language, that the mortgagees “are about to endorse, on a negotiable note or notes, for the said Ashton Garrett, and to continue the endorsement until the first note and all its renewals are paid up.” The bill charges that the mortgagees endorsed a negotiable note, which was discounted by the Bank of the United States, the money-drawn by the mortgagor and by him applied to the use of the firm of Trimble and Garrett, (which consisted of-David Trimble and Ashton Garrett, the mortgagor) and that it was borrowed for that purpose. ' That Trimble refused to re-endorse the renewals of the original note, and told Garrett, the mortgagor, he must get other endorsers, as to him, which fact the complainant alleges was unknown to him until he renewed the pote. That the mortgagor got Eli Shortridge to eni dorse, in the place of Trimble. That Peter R. Garrett, having removed from the state, the complainant Shortridge and Peebles continued to endorse until the mortgagor was unable to renew the note further; whereupon the bank brought suit and recovered judgment. That execution was levied on pari of the mortgaged property, which sold for more than $1,300, leaving a balance due of $500 or $600, which the complainant would have to pay, owing to the insolvency of the other parties, against whom judgment had been rendered. It may here be remarked, that the exhibits show that the complainant, on the 28th February, 1823, replevied the balance of the debt, amounting to $¡565 68.
The bill proceeds and charges that the house and lot mentioned in the mortgage, remained unsold, that the legal title was in Trimble, who bad sold the same to, the mortgagor, who held by written contract, and that Trimble had not been paid the purchase money, as the complainant had recently been, informed; that Trimble drew the mortgage, and at the time it was signed, sealed and delivered to him, the complainant and the other mortgagees, did not communicate or make known any claim or lien he had on said lot, for the purchase money or any thing else, and- assured the complainant, at the time, there was no dangerin endorsing the note. The foregoing are all the allegations of the bill necessary to b,e considered, so far as the house *214 and lot is brought in question, which the complainant is endeavoring to subject to the payment of the balance the debt due.
coarté of^e
The answer of Trimble contains the following averments and admissions: Pie admits that the complainant, himself, Peter R. Garrett and Peebles endorsed a note for Ashton Garrett’s accommodation, afterwards negotiated at the United States branch Bank at Lexington, before which, said Ashton executed the mortgage in th'e bill mentioned, to secure his endorsers against loss, in consequence of their endorsement on that note, and all subsequent endorsements made to renew it. He admits that the mortgage was given on the day of its date, and that on the tlth of September, 1816, he had executed his bond to the mortgagor for the sale and conveyance of the house and lot, in the mortgage and bill mentioned; that he received three notes for the purchase money; that he retained alien on the house and lot and intends to hold it until the purchase money is fully paid. Pie admits that he holds the legal title to the house and lot and avers that the purchase money has not been paid'. He admits that he drew the mortgage, denies that he failed to communicate the fact that he held a lien.on the house and lot; on the contrary he states that lie did communicate it to the complainant, and informed him that his, Trimbles lien, would have precedence. He admits that after one or two renewals of the no.te in bank, he withdrew his name and refused to continue as endorser, and charges that the negroes mortgaged were worth the sum due on the note. He says he believes that the money was all or nearly all, paid over into the firm of Trimble and Garrett, and avers that about the same time, he paid over to the firm about $¡3,500. He states that the co-partnership of Trimble and Garrett was dissolved, by' mutual consent, on the 10th of September, 1818, and the goods on hand equally divided, each partner taking half. He states, in answer to the allegations of the bill, on this subject, that Amos Davis was appointed receiver for the firm, to collect debts due it after the dissolution of the partneyship, and states his belief that the debts due the firm, collected by himself and Davis, have been paid over in discharge of debts owing by ffie firm. He states that the partnership was a losing *215 corteen), and that it is largely indebted tó him. He does not disclose the amount of debts due the firm, collected by him, although called on to discover amount. He does not deny the allegations that the money was borrowed by Garrett for the purposes of the firm, unless the statement that he endorsed for Garrett’s accommodation is to be taken as a denial. He does not deny the allegation that he assured the complainant that there was no danger in endorsing the note, but says, “he always supposed that said endorsements were made by the complainant, at the request of said Garrett, and to oblige him, and not this defendant, and tbat the object of any conversation between him, (to-wit, the complainant) and this defendant, was to consult about the mortgage,” &c. These allegations, resting in the knowledge of Trimble, if not denied, must be regarded as admitted.
W}iej,a a}) al., legation rests in theknowdo not deny it, it must be considered as a nu e .
Decree of the courtbeI°w.
Iftehderbave a probase money, and the purchaser j^d^upona* bill, by mortgagee, to ^^bo’ultf decree a sale, andappropriate th® P™‘ discharge the lien of the and taortgage.
a Perso1}. or having (be legal title to real property, stand by and 3ertthmort°" |&gid orsold, and do not assert bis the mort^arn gagee or purohaser, be is, considered as waiving his lien.
*215 Under the foregoing view of the bill and answer, the question arises, what decree ought the court to have pronounced relative to the house and lot, and the defendant Trimble? The court below dismissed the bill as to Trimble, and gave him his costs.
This, in our opinion, was erroneous. If Trimble had a lien on the house and lot,'for the purchase money, superior to that of the complainant, then the court should have decreed a sale of the house and lot, to satisfy the amount due Trimble, and if there was any balance left, after paying the purchase money, that balance should have been appropriated in pursuance of the mortgage. It could not be told whether there would be such balance or not, until the property was Sold. But we are not willing to concede that the lien of Trimble, for the purchase money, was superior to the complainant’s under the mortgage; on the contrary, We are of opinion that Trimble, under the fact's presented, must be regarded as having waived his lien for the purchase money, and as having assented that the house and lot should become a security for the pay-meat of the notes contemplated by the mortgage. In the case of Springle and Bobbs heirs vs. Morrison, 3 Littell, 55, it is laid down as a general rule, “that the purchaser of an equitable title cannot stand in a better situation than the person from whom he bought. But *216 tb this fule there are exceptions; for if a person haring a r*§htto an estate, encourage or even permit a purto buy it of another, the purchaser will bold it against the person who has the right.” In support of ^is doctrine, see also, Sugden. Ven. 539, and the cases there cited. Morrison was deprived of his legal title by being present when the property was sold, and acquiesing in the purchase without objecting to the right the seller to pass the title, or asserting any claim against or to the lot sold. We think the principles récognized in the decision which compelled Morrison to surrender his legal title, when applied to the facts iti the present case, destroy Trimble’s lien on the house and lot contracted to Garrett. He wrote the mortgage, he was a grantee in it, and he acquiesced in the taking of Garrett’s title by the other grantees and himself, withodt objecting to Garrett’s right, to sell, or asserting any clairn against the house and lot. Thus the complainant was encouraged to endorse the note for Garrett, by the conduct of Trimble. He, therefore* like Morrison, shall not be permitted to resist the complainant’s claim, derived from Garrett; We do not forget the allegation made by Trimble, in his ansvtér* that he informed the complainant of his lien for thd purchase money, and that it would have precedence over the mortgage. The complainant asserts that Trimble gave him no such information* and there is no proof; As Trimble holds the affirmative, he ought to have proved it; having failed to do so* we cannot receive it as a fact. ((De non appdtentibiis et non existentibus eadem est ratio.
There is another view of this case* worthy of consideration, and which we think entitled to weight, as operating against the lien now set up by Trimble. The money borrowed from the bank was for the use of the firm of Trimble and Garrett* and was appropriated to the purposes of the firm. May not Trimble, therefore, be properly regarded as a principal* in respect to the complainant and the other endorsers of the note? ¿Shall he receive the benefit of the monéy borrowed, and then-withhold property included in the mortgage written by himself, and which the mortgage sets apart to save the complainant and others from loss? We do net consider it essential to give a decisive response ta *217 these questions. But we may safely venture thé assertion that the law of partnership furnishes strong reason for an opinion that Trimble ought to be ed in the attitude of a principal, and equally bound with the mortgagor, for the payment of the debt to the bank. His having failed to endorse after one or two renewals, can riíaké no difference in this view of the case. The court erred in not decreeing a foreclosure of the mortgage and a sale of th'e house and lot for the complainant’s indemnity.
If a partner “°rtg?g.e Ms partnership 6 property, to indemnify booomesSinsolvent, the other partner the property6 from the object of the to& the discharge of the debts °f t[ie finn“
There is also another error in the decree, of importanee, as operating against the complainant. After the dissolution of the firm of Trimble and Garrett, Amos Davis was appointed collector of sundry debts due the firm. Davis was made á defendant with a view to reach that portion of the debts of thé arm in his hands, or the money arising frbm their collection, which was conveyed by Garrett to the grantees in the mortgage. Davis, in his answer; admits that he had received débts due the firm for collection; that he had collected some money and paid it over in discharge of debts due by the firm; that he liad not fully settled his accounts for Collections and payments, but was willing to settle, &c. Trimble, in his answer on this subject, corresponds with Davis, and expresses himself satisfied with Davis’s conduct as collector. He had good reason to be satisfied with it, so far as his pecuniary interest was concerned ; for it is manifest from the statements of Davis and Trimble, that Garrett’s interest in the firm debts, placed in Davis’s hands for collection, and which had been conveyed to the grantees in the mortgage, to indemnify them against loss, on account of the debt to the bank, was used to pay debts due by the firm, and which might have been collected entirely from Trimble, and thus the appropriation of Garrett’s interest in those debts due the firm, made by the mortgage, was defeated. After Trimble had withdrawn his endorsement as one of the mbrtgagees, so far as the title of the mortgaged property was vested in him, he held it in trust for the benefit of the mortgagees who continued their endorsements. He ought not, therefore, to be permitted, through Davis, or by himself, to divert the mortgaged property from the course contemplated *218 by the mortgage. This has been done improperly, and Trimble has received the benefit; as Garrett is insolvent, to the extent of Garrett’s interest in the firm, debts collected by Davis, and paid over in discharge of debts against the firm. The court should, therefore, have met the proposition contained in Davis’s answer and taken an account of the amount collected by him for the firm, and after deducting all reasonable charges, should have decreed against Trimble to the extent of Garrett’s interest in the money so collected, and which had been paid over in discharge of the firm debts, if it were necessary to decree so much after the sale of the house and lot. The cause was prematurely tried as it regarded Trimble.
Triplett, for plaintiff; Crittenden, for defendants.
The complainant is not bound to pursue the negro, Charles, and to subject him, under the mortgage, pre-^ vious to foreclosing the mortgage on the house and lot. and before he reaches the interest of Garrett in the firm debts. The bill was properly dismissed as to Boswell, because it was not proved that the negro sold him by Norton, was one of the mortgaged negroes, a fact put in issue by the answer of Boswell.
The decree of the circuit court must be reversed and the cause remanded for proceedings to be had not inconsistent with this opinion, and the plaintiff in error must recover his costs.